# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| BERNADETTE BARNETT, | |
| Plaintiff, | Case No. 14 C 5152 |
| v. | |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, ILLINOIS, | Judge John Robert Blakey |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

In her three-count Complaint, Plaintiff Bernadette Barnett, a former Chicago Public Schools teacher, alleges that Defendant Board of Education of the City of Chicago, Illinois (the "Board") discriminated and retaliated against her, in violation of Title VII and the Age Discrimination in Employment Act ("ADEA"). Complaint, Counts I (race discrimination), II (age discrimination) and III (retaliation). The Board, in particular, had reassigned Barnett to an administrative position pending the results of its investigation into Barnett's alleged unprofessional behavior at school, for example, calling one student a "heifer" and another a "stupid ass little girl." Based on its investigation, the Board approved dismissal charges against Barnett.

The Board now moves for summary judgment [36], arguing that no reasonable juror could conclude that the Board's decision to reassign and approve dismissal charges was anything but the product of Barnett's own misconduct, let

alone her race (black), age (over 40 years old) or prior discrimination complaint. This Court agrees.

I. **Legal Standard**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party, here, Barnett. *See CTL ex rel. Trebatoski v. Ashland School District*, 743 F.3d 524, 528 (7th Cir. 2014).

II. **Facts[1]**

Barnett, who is black and has been over the age of 40 at all relevant times, is a former Chicago Public Schools teacher at Reavis Elementary Math & Science Special School ("Reavis"). DSOF ¶¶ 1-2. Barnett worked at Reavis from January 31, 2011 until October 30, 2012, when the Board reassigned her to the Lake

---

[1] The facts are taken from the parties' Local Rule 56.1 statements and the exhibits thereto. "DSOF" refers to the Board's statement of facts [38], with Barnett's responses [59]. "PSOAF" refers to Barnett's statement of additional facts [60], with the Board's responses [66].

2

Calumet Elementary Network Office. DSOF ¶¶ 11, 21, 36. Barnett stayed at the Lake Calumet Elementary Network Office until on or about September 12, 2014, when she submitted an Application for Resignation or Retirement to teach at another school district. DSOF ¶ 42.

This discrimination action arises from Barnett's pattern of unprofessional behavior at Reavis, first in March 2011, and then again in May 2012, and from September to October 2012.

*March 2011.* In March 2011, and after receiving complaints from parents and staff that Barnett had used inappropriate language with students and also had told one student to hit another, then-Principal Michael Johnson issued a Notice of Pre-Discipline Hearing. DSOF ¶ 14. The Board held the Pre-Discipline Hearing on March 21, 2011. DSOF ¶ 15. Based on the Pre-Discipline Hearing and Principal Johnson's subsequent interviews of students, on March 30, 2011, Principal Johnson issued a Notice of Disciplinary Action, suspending Barnett for 14 days for violating the Board's Employee Discipline Policy. DSOF ¶ 17. Barnett appealed her suspension, but was unsuccessful. DSOF ¶¶ 18-19.

*May 2011.* On or about May 25, 2011, the Board reassigned Barnett to its "Area 15 Office" pending its investigation of another incident. DSOF ¶ 21. The cited record does not establish the basis for this investigation, but the Board avers that Barnett had relayed over the school intercom that one of her students commented: "suck my dick." DSOF ¶ 21.

3

Perhaps in response to being reassigned, Barnett filed a Charge of Discrimination with the EEOC (Charge No. 846-2011-94410) on February 1, 2012. DSOF ¶ 22. Barnett alleged that she faced discrimination at Reavis based on her age, race, retaliation and sex. DSOF ¶ 22. Barnett linked her reassignment to that discrimination, writing in the facts field of the EEOC Charge of Discrimination form:

> During my employment, I have been subjected to sexual harassment and harassment. I complained to Respondent [Chicago Public Schools] to no avail. I was removed from my position and assigned to Respondent's local office.

DSOF ¶ 22.

On May 9, 2012, Barnett and the Board executed a Settlement Agreement, resolving their cross-grievances. DSOF ¶ 24. Barnett accepted a 14-day suspension for her misconduct in exchange for withdrawing her February 1, 2012 Charge of Discrimination. DSOF ¶ 24. Barnett understood her suspension to be for the so-called "intercom incident." DSOF ¶ 25.

***September to October 2012.*** For the 2012 to 2013 school year, Barnett was assigned to a 5th Grade non-mathematics class. PSOAF ¶ 1. Barnett, in her affidavit supporting her response brief, asserts that this assignment was "outside her certification and specialty." PSOAF ¶ 1. Barnett also testified that her class assignment was omitted from the Duty Schedule in August 2012, which lists each teacher's assignments before the upcoming semester. PSOAF ¶ 1.

Also at the beginning of the new school year, the allegations that Barnett was engaging in unprofessional conduct persisted. *See* DSOF ¶¶ 28, 32, 35. Ray Poloko,

4

an investigator in the Board's Law Department, investigated multiple incidents from September and October 2012, interviewing the staff and students who witnessed each incident. DSOF ¶¶ 28-35. In three investigation memos issued in October and November 2012 and addressed to Senior Assistant General Counsel James Ciesil, Poloko concluded that "credible evidence" supported the following allegations:

1. Barnett initiated a verbal altercation with Nicole Poplawski (another Reavis teacher) in the presence of students.

2. Barnett called students: "bitches, bitch asses, little bitch, ghetto bitches, dumb and stupid."

3. Barnett remarked to her students: "I went to college and studied hard. White kids are smarter than black kids."

4. Barnett called a 10 year-old female student a "heifer."

5. Barnett called an 11 year-old female student a "stupid ass little girl."

6. Barnett exclaimed, "you all got me fucked up," which was overheard by her class.

DSOF ¶¶ 28, 30-31, 33-35. Barnett, for her part, denies that she made most of these statements and attempts to justify the remainder. PSOAF ¶¶ 3-7.

While Poloko's investigation was ongoing, CEO of Chicago Public Schools Barbara Byrd-Bennett issued an October 30, 2012 letter, reassigning Barnett to an administrative position at the Lake Calumet Elementary Network Office, pending the results of the Board's investigation. DSOF ¶ 36; 10/30/12 Byrd-Bennett Letter. Principal Gail King (who took over from Principal Johnson in July 2012) gave this letter to Barnett on or about November 2, 2012. DSOF ¶¶ 26, 36.

5

Based on Poloko's findings, CEO Byrd-Bennett, in a June 17, 2013 letter, (1) approved dismissal charges against Barnett for "conduct unbecoming of a Chicago Public Schools employee," in violation of Section 34-85 of the School Code of Illinois; and (2) requested that Barnett be suspended without pay pending a dismissal hearing. DSOF ¶¶ 38-39; 6/17/13 Byrd-Bennett Letter. The Board tentatively set the dismissal hearing for July 15, 2013. 6/17/13 Byrd-Bennett Letter. Also in her letter, CEO Byrd-Bennett recited Barnett's six incidents of unprofessional conduct from September to October 2012. DSOF ¶ 39.

The July 15, 2013 dismissal hearing was moved and, before any hearing was held, Barnett tendered her resignation. DSOF ¶¶ 42-43. In her September 12, 2014 Application for Resignation or Retirement, Barnett explained that she accepted a teaching position in another school district. DSOF ¶ 42; 9/12/14 Application for Resignation or Retirement.

### III. Analysis

#### A. Counts I and II: Race and Age Discrimination

In Counts I and II of her Complaint, Barnett, in connection with her reassignment to the Lake Calumet Elementary Network Office and the Board's approval of dismissal charges, alleges that the Board discriminated against her based on her race and age in violation of Title VII and the ADEA.[2] To prove these claims, Plaintiff can proceed under the direct and/or indirect methods. In response

---

[2] To the extent that the Complaint can be construed to include a harassment claim, any such claim is dismissed. Barnett elected not to respond to the Board's arguments seeking summary judgment on any harassment claim. *Mitsui Sumitomo Insurance Co., Ltd. v. Moore Transportation, Inc.*, 500 F.Supp.2d 942, 950-51 (N.D. Ill. 2007) (discussing waiver).

6

to the Board's summary judgment motion, Barnett presents no direct evidence of discrimination, electing instead to proceed under the indirect method only. For both statutes, the *McDonnell Douglass* burden shifting framework governs when proceeding under the indirect method. *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 364-65 (7th Cir. 2009).

Under the indirect method, the initial burden is on Barnett to provide evidence that: (1) she is a member of a protected class; (2) she was meeting the Board's legitimate expectations at the time of the alleged adverse action; (3) she suffered an adverse employment action; and (4) the Board treated similarly situated employees not in the protected class more favorably. *Scaife v. Cook County*, 446 F.3d 735, 739 (7th Cir. 2009), *overruled on other grounds*, *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013); *Amrhein v. Health Care Service Corp.*, 546 F.3d 854, 859 (7th Cir. 2008). Once Barnett has established her *prima facie* case, the burden shifts to the Board to provide a legitimate, non-discriminatory reason for the adverse employment action. *Scaife*, 446 F.3d at 739; *Amrhein*, 546 F.3d at 859. If the Board meets this burden, the burden shifts back to Barnett to demonstrate that the proffered reason is pretextual. *Scaife*, 446 F.3d at 739-40; *Amrhein*, 546 F.3d at 859-60. As discussed in Subsections 1 and 2 below, here, Barnett has not met the fourth element of her *prima facie* case, and the Board also has offered legitimate, non-pretextual reasons for reassigning Barnett and approving dismissal charges against her.

### 1. Element 4: Similarly Situated Employees

Under the fourth element of her *prima facie* case, Barnett—who is black and over the age of 40—must show that the Board treated similarly situated employees not in the protected class more favorably. *Scaife*, 446 F.3d at 739; *Amrhein*, 546 F.3d at 859. A similarly situated employee need not be identical, but must be comparable to Barnett in all "material respects." *Eaton v. Indiana Department of Corrections*, 657 F.3d 551, 559 (7th Cir. 2011). Barnett normally must show that the comparators: (1) dealt with the same supervisor; (2) were subject to the same standards; and (3) had engaged in similar conduct without differentiating or mitigating circumstances that distinguish their conduct or the employer's treatment of them. *Amrhein*, 546 F.3d at 860. One such differentiating or mitigating circumstance may be the comparators' disciplinary history. *See id.*

In *Amrhein*, a Title VII gender discrimination case, the Seventh Circuit affirmed the district court's grant of summary judgment for the defendant employer, finding that the terminated female employee (Kitsy Amrhein) failed to identify any similarly situated employees who had not been terminated. 546 F.3d at 858, 860. As here, Amrhein's three purported comparators all differed from her in the same "material" way—their disciplinary history. *Id.* at 860. Unlike Amrhein, who was terminated after her second infraction of the employer's Code of Conduct and Business Ethics Code, the three comparators had no disciplinary history or just a single infraction, thereby explaining their lesser punishments for similar conduct. *Amrhein*, 546 F.3d at 856-58, 860. *Amrhein* is part of a string of

Seventh Circuit decisions concluding that differences in disciplinary history, including the type and volume of infractions, is material. *E.g.*, *Patterson*, 589 F.3d at 366; *Jones v. Union Pacific Railroad Co.*, 302 F.3d 735, 745 (7th Cir. 2002); *Radue v. Kimbery-Clark Corp.*, 219 F.3d 612, 618-19 (7th Cir. 2000).

*Amrhein* and its siblings confirm that, here, Barnett's younger, presumably white comparators who teach at Reavis—Tonia Flippen and Nicole Poplawski—are not, in fact, comparable. DSOF ¶ 46. Those two, unlike Barnett, never have been suspended. DSOF ¶ 47. Barnett claims that Flippen and Poplawski lack any disciplinary record because they are young and white, but Barnett fails to make the predicate showing that Flippen and Poplawski ever, for example, used inappropriate language at work, let alone as often as Barnett, yet avoided punishment. Like the failed comparators in *Patterson*, there is "absolutely nothing in the record" to suggest that Flippen and Poplawski violated any Board policy. 589 F.3d at 366. Barnett thus lacks any viable comparators.

### 2. Pretext

Summary judgment on Counts I and II also is warranted because Barnett fails to rebut the Board's legitimate proffered reason for reassigning her pending its investigation and later approving dismissal charges. On October 30, 2012, the Board reassigned Barnett to an administrative position at the Lake Calumet Elementary Network Office, pending the results of its investigation. DSOF ¶ 36; 10/30/12 Byrd-Bennett Letter. After reviewing the Law Department's conclusions in its investigation memos, on or about June 17, 2013, the Board approved

9

dismissal charges against Barnett for "conduct unbecoming of a Chicago Public Schools employee." DSOF ¶¶ 38-39; 6/17/13 Byrd-Bennett Letter. In her June 17, 2013 letter, CEO Byrd-Bennett outlined Barnett's six incidents of inappropriate conduct from September to October 2012. DSOF ¶ 39.

In response, Barnett first attempts to disqualify the Law Department's investigation memos as documents this Court can consider at summary judgment. Barnett, like the aggrieved postal workers in *Stewart*, misunderstands the concept of hearsay when objecting to the Board's reliance on the Law Department's investigation memos. Although the memos include statements by witnesses that Barnett used inappropriate language, these statements, like the ones in *Stewart*, are "evidence of what motivated [the Board's] decision" to terminate Barnett. *Stewart v. Henderson*, 207 F.3d 374, 377 (7th Cir. 2000). They are not being offered for their truth—that is, to show that Barnett in fact used inappropriate language— which may be hearsay. *See id.*

Again delving into the merits, Barnett also denies that she used inappropriate language or explains why she used that language. Retrying the merits of the Board's decisions misses the point. The only question this Court must ask is whether the Board has a "legitimate, nondiscriminatory" reason for reassigning Barnett and approving dismissal charges against her, "not whether it made the correct decision." *Naik v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 627 F.3d 596, 601 (7th Cir. 2010). An incorrect decision does not, without more (and there is nothing more here), violate Title VII and the ADEA. *See Naik*, 627 F.3d at

10

601; *Stewart*, 207 F.3d at 378. Nor does a decision based on findings that may be mistaken. For these reasons, summary judgment in the Board's favor on Counts I and II of the Complaint is warranted.

### B. Count III: Retaliation

In Count III of her Complaint, Barnett argues that the Board reassigned her to the Lake Calumet Elementary Network on October 30, 2012, and later approved dismissal charges against her, in retaliation for filing an EEOC Charge of Discrimination almost 10 months earlier, on February 1, 2012. Title VII and the ADEA prohibit such retaliation. *Barton v. Zimmer, Inc.*, 662 F.3d 448, 455 (7th Cir. 2011); *Burks v. Wisconsin Department of Transportation*, 464 F.3d 744, 758 n.16 (7th Cir. 2006). Barnett proceeds under the direct method this time. Under the direct method, Barnett must show that: (1) she engaged in statutorily protected activity; (2) the Board subjected her to adverse employment action; and (3) there was a causal connection between the two. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). Putting aside the first two elements, Barnett cannot show causation.

To show causation, Barnett relies on the timing of her reassignment. Suspicious timing alone, though, rarely is sufficient at summary judgment. The general rule in this Circuit is that employees cannot survive summary judgment in the face of long intervals between the protected activity and the adverse employment action, unless additional circumstances show a causal nexus. *See, e.g.*, *Malin v. Hospira, Inc.*, 762 F.3d 552, 560 (7th Cir. 2014); *Harper v. C.R. England,*

11

*Inc.*, 687 F.3d 297, 308 (7th Cir. 2012); *Davis v. Time Warner Cable of Southeastern Wisconsin, L.P.*, 651 F.3d 664, 675 (7th Cir. 2011); *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 675 (7th Cir. 2011). Intervals as short as two months—and even shorter—are too long to carry an inference of discrimination or create any triable issue of fact. *Harper*, 687 F.3d at 307 n.31 (finding a two-month gap to be too long, and collecting Seventh Circuit cases with six and seven-week gaps); *Harris v. FedEx Freight, Inc.*, 110 F. Supp. 3d 805, 822 (N.D. Ill. 2015) (Blakey, J.) (collecting cases). Barnett, for her part, fails to cite any contrary case law. Thus, the 10-month gap here is far too long to create a material issue of fact at summary judgment.

To bridge the gap, Barnett argues that, two months earlier in August 2012, the Board failed to assign her a class on the Duty Schedule, in violation of Article 5-4 of the Chicago Teachers Union's collective bargaining agreement. PSOAF ¶ 1. Whether or not the Board violated Article 5-4, nothing in the record shows that Barnett's omission from the Duty Schedule carries any age or race overtures. In any event, the lapse of time remains too long for this Court to speculate at summary judgment that the Board had a retaliatory motive.

Even if time was Barnett's friend (and it is not), the Seventh Circuit has "underscored the importance of context" when assessing whether an inference of causality is warranted. *Davis*, 651 F.3d at 675. In *Davis*, where there was just a 3 to 14 day gap between the employee's discrimination complaints and his termination, the Seventh Circuit found that no inference of causality could be

drawn, so summary judgment in favor of the employer was warranted. *Id.* at 674-75. As here, there was a "significant intervening event" in *Davis*: the employee had violated the Employee Guidelines, warranting his termination. *Id.* at 675. Likewise, here, Barnett's repeated use of inappropriate language and other violations of the Board's Employee Discipline Policy in September and October 2012 breaks any inference that her February 2012 complaint caused her October 30, 2012 reassignment and the later approval of dismissal charges. For these reasons, summary judgment in the Board's favor on Count III of the Complaint is warranted.

## IV. Conclusion

The Board's summary judgment motion [36] is granted. The Clerk is directed to enter judgment for Defendant and against Plaintiff under Rule 58. Civil case terminated.

Dated: May 26, 2016

                                                           Entered:

                                                     John Robert Blakey
                                                     United States District Judge